1
ADAM L. BRAVERMAN
United States Attorney
2
DYLAN M. ASTE
Assistant U.S. Attorney
3
California Bar No. 281341
Office of the U.S. Attorney
4
880 Front Street, Room 6293
San Diego, CA 92101
5
(619) 546-7621
Dylan.Aste@usdoj.gov
6
Attorneys for United States

7
## UNITED STATES DISTRICT COURT
8
## SOUTHERN DISTRICT OF CALIFORNIA
9

10
UNITED STATES OF AMERICA,

11
Petitioner,

12
v.

13
THE STATE OF CALIFORNIA and
CURES 2.0 PROGRAM,
14

15
Respondents.

16

Case No.: **'18 CV 2868 L    MDD**

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PETITION TO ENFORCE UNITED
STATES DRUG ENFORCEMENT
ADMINISTRATION
ADMINISTRATIVE SUBPOENA**

17
18
19
20
21
22
23

The State of California, through the California Department of Justice, which maintains the CURES 2.0 Program[1] (collectively "California"), has failed to comply with a lawful administrative subpoena issued by the United States Department of Justice, Drug Enforcement Administration ("United States" or "DEA"). Accordingly, the United States, on behalf of the DEA, petitions the Court to enter an order requiring California to comply with the subpoena. *See* 21 U.S.C. § 876(c). ///

24
25
26
27
28

---

[1] CURES refers to the Controlled Substance Utilization Review and Evaluation System. CURES is California's prescription drug monitoring program database. When a pharmacy dispenses a controlled substance, it is required to report to CURES information, including the patient's name, address, and date of birth; the dispensing pharmacy's identity; and the prescribing practitioner's identity. *See* Cal. Health and Safety Code § 11165.

## BACKGROUND

On June 26, 2018, DEA issued administrative subpoena R2-18-748338 ("Subpoena") to California and served it soon thereafter.  Pet. Ex. A.  The Subpoena, lawfully issued under 21 U.S.C. § 876(a), demands the production of specific CURES records of five individuals for the limited period of January 1, 2014 to June 26, 2018.  The Subpoena required production on July 1, 2018.  At California's request, the DEA agreed to extend the production date to July 17, 2018.  California, on the date of the extended deadline, then claimed it would need "several weeks" to evaluate its obligation to respond to the Subpoena.[2]  To date, California has not complied.

After several discussions between California and the United States, California stated that it will not produce the CURES records due to concerns about revealing confidential patient information.  California stated that it requires a warrant or Grand Jury subpoena in order to provide CURES records.   California has given no legal basis for this requirement but instead appears to be relying on internal policy.

The authorities cited on the face of the subpoena preclude California's refusal to comply with the lawfully issued Subpoena.  The United States has made good faith efforts to negotiate compliance with the Subpoena, and has provided further information to California regarding legal authority for compliance and law enforcement relevance of the requested information.  The United States now requests that the Court enter an order requiring California's prompt and complete compliance with the Subpoena.

///

---

[2] California stated that it was evaluating *Carpenter v. United States*, 138 S. Ct. 2206 (2018) to determine its obligation to respond to the Subpoena without a warrant.  *Carpenter* is a "narrow" decision applicable to an individual's privacy interest in cellular site location information ("CSLI").  *See Carpenter*, 138 S. Ct. at 2217, 2219-20.  The Court held that the Government's acquisition of seven days of CSLI constitutes a Fourth Amendment search, but declined to decide whether a more limited period of CSLI may be free from Fourth Amendment scrutiny.  *Id.* at 2217 n.3, 2223.

2

## LEGAL STANDARD

The scope of judicial inquiry in an agency subpoena enforcement proceeding is "quite narrow."  *United States v.  Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012).  The three-part inquiry is: "(1) whether Congress has granted the [agency] authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence [sought] is relevant and material to the investigation."  *Id.*; *see also Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946) (holding that a court may enforce an administrative subpoena upon a showing that the investigation is authorized by Congress, is for a purpose Congress can order, and documents sought are relevant to the inquiry).  Courts "must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency."  *EEOC v. Federal Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009).  Relevance is determined in terms of the investigation rather than as prospective trial evidence, and courts have emphasized that this prong of the inquiry is "not especially constraining."  *Id.*

Even if all three parts are satisfied, "a Fourth Amendment reasonableness inquiry must also be satisfied."  *Golden Valley Elec. Ass'n*, 689 F.3d at 1113.  But in the context of administrative subpoenas, the Fourth Amendment's restrictions are limited.  *Id.* at 1115.  The only additional inquiry required by the Fourth Amendment is whether the "specification of the documents to be produced [is] adequate, but not excessive, for the purposes of the relevant inquiry."  *Id.*

## ARGUMENT

### 1.  The Subpoena Satisfies the Recognized Enforcement Requirements

The Unites States is not aware of any court that has invalidated DEA's use of administrative subpoenas to obtain material relevant to an investigation, and California has not once disputed the validity of this Subpoena.  The Court should now enforce this Subpoena because it meets the narrow requirements. *See Golden Valley Elec. Ass'n*, 689 F.3d at 1113.

First, the DEA has authority to investigate.  Congress enacted the Controlled Substances Act ("CSA") as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 to "strengthen law enforcement tools against the traffic of illicit drugs."  21 U.S.C. § 801 *et seq.*; *Gonzales v. Raich*, 545 U.S. 1, 10 (2005).  The CSA's main objectives are "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances."  *Gonzales*, 545 U.S. at 12.  The CSA gives the Attorney General the authority to issue administrative subpoenas relevant or material to an investigation.  21 U.S.C. § 876(a).  This authority has been delegated to the DEA.  *See* 28 C.F.R. § 0.100 and pt. 0, app. to subpart R, sec. 4.[3]

Second, the DEA followed the procedural requirements.  The DEA properly issued and served the Subpoena on California.  California has not disputed a failure to follow procedural requirements during its discussions with the United States.

Third, the evidence is relevant and material to a DEA investigation.  The Subpoena specifically states that the information requested is "[p]ursuant to an investigation of violations of [the CSA]."  It further mentions the "criminal investigation being conducted."  Pet. Ex. A.

Finally, the Subpoena request satisfies the Fourth Amendment reasonableness requirement.  The narrowly tailored Subpoena seeks the production of specific CURES records of five individuals, for the limited period of January 1, 2014 to June 26, 2018.  The documentary demand, specific as to parties, prescription information, and timeframe, is reasonable, relevant, and material to DEA's investigation.  Thus, the Subpoena satisfies the narrow inquiry and the Court should enforce it.

///

---

[3]   Indeed, in the context of controlled prescription drugs, the DEA is not merely a criminal investigative agency; it is simultaneously, *inter alia*, an administrative agency, tasked with overseeing practitioners' controlled drug registrations (the federal licensure authorizing handling of such drugs), *see* 21 U.S.C. §§ 821 *et seq.*, and a civil enforcement agency, with the power to pursue fines and injunctive relief against registered practitioners for CSA violations, *see, e.g.*, 21 U.S.C. §§ 842, 843(e).

*U.S. v. California*

**2. <u>Privacy Laws do Not Prevent Production of CURES Records to the DEA</u>**

California asserts that it would like to fully cooperate with the DEA, but claims that it has a countervailing duty to protect the privacy rights of Californians. The United States is aware of no authority holding that a state entity may rely on state law privacy interests to refuse to respond to a federal subpoena, issued pursuant to federal law.

In any event, CURES was designed in part to assist "law enforcement and regulatory agencies in their efforts to control the diversion and resultant abuse of [Schedule II-IV] controlled substances."  Cal. Health and Safety Code § 11165(a). CURES operates under existing privacy laws, and the records "shall only be provided to appropriate state, local, and federal public agencies for disciplinary, civil, or criminal purposes . . . as determined by the [California] Department of Justice."  *See id.* § 11165(b)(2)(A).

California has not informed United States counsel which privacy laws prevent disclosure, other than making a general reference to the State Constitution. Presumably, California is referring to article I, section 1 of the California Constitution, which guarantees certain inalienable rights, including "privacy." CAL. CONST. art. 1, § 1.  The California Supreme Court addressed this privacy issue when the Medical Board of California "obtained data from CURES without a subpoena or warrant supported by good cause in the course of investigating" a physician.  *Lewis v. Superior Court*, 397 P.3d 1011, 1014 (Cal. 2017).  The *Lewis* court held that "[e]ven assuming the [Medical] Board's actions constituted a serious intrusion on a legally protected privacy interest, its review of these records was justified by the state's dual interest in protecting the public from the unlawful use and diversion of a particularly dangerous class of prescription drugs and protecting patients from negligent or incompetent physicians."  *Id.* at 1018-19.

Like the Board, the DEA's use of the CURES records during its investigation is reasonable because "any potential invasion of privacy . . . [is] justified by

*U.S. v. California*

countervailing interests" in combatting the opioid crisis.  *See id.* at 1022.[4]  Thus, state privacy laws do not prevent California from producing the CURES records per the Subpoena; rather, they authorize it precisely so that DEA can continue its efforts to control the diversion and resultant abuse of controlled substances.  *See* Cal. Health and Safety Code § 11165(a).[5]

### 3.   Federal Law Preempts Any Conflicting State Law

Because California appears to have refused to comply with the Subpoena based on an unofficial policy, the Court need not reach the issue of whether any state law or regulation is preempted.  Yet even if a state privacy law contradicted federal authority requiring production, it would not matter.  Federal law, not state law, controls the production of protected health information in response to Section 876 subpoenas in CSA investigations.  The Supremacy Clause precludes state law from interfering with the enforcement of federal law.  U.S. CONST., art. VI, cl. 2.  The Supremacy Clause gives Congress the power to pre-empt state law expressly. *Hillman v. Maretta*, 569 U.S. 483 (2013).  "Where enforcement of . . . state law would handicap efforts to carry out the plans of the United States, the state enactment must give way."  *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 103-04 (1940). Likewise, when "compliance with both federal and state regulations is a physical impossibility," the "state law is nullified to the extent that it actually conflicts with federal law."  *See Hillsborough Cnty., Fla. v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985).

---

[4] *Lewis* also quotes the California Court of Appeals' holding that the "well-known and long-established regulatory history significantly diminishes any reasonable expectation of privacy against the release of controlled substances prescription records to state, local, or federal agencies for purposes of criminal, civil, or disciplinary investigations."  *Lewis*, 397 P.3d at 1016.

[5] Notably, even California appears to recognize that its own laws allow it to provide CURES records in response to a Section 876 subpoena: California routinely accepts and complies with such subpoenas for CURES records tracking the prescribing or dispensing history of a physician or pharmacy.  Those CURES records provide identical categories of patient information sought here (*e.g.*, patient name, patient date of birth, the type/strength/quantity of controlled substance, etc.).

*U.S. v. California*

The United States Congress drafted the CSA to expressly preempt state law when "the two cannot consistently stand together." *See* 21 U.S.C. § 903.   Any perceived state law on which California may attempt to rely that requires a warrant or Grand Jury subpoena cannot consistently stand with the CSA.  Such requirement may not create a physical impossibility, but it certainly creates a sufficient obstacle to the operation of the CSA.  *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (discussing both types of conflict preemption: physical impossibility and sufficient obstacle); *see also United States v. Zadeh*, 820 F.3d 746, 750–52 (5th Cir. 2016) (applying the sufficient obstacle test to hold that 21 U.S.C. § 876 preempts a provision of the Texas Occupations Code barring compliance with administrative subpoena absent patient consent or application of an enumerated exception under state law).

Indeed, this case presents more than an insignificant obstacle to Section 876 subpoena authority: California's unofficial policy completely thwarts administrative subpoenas for patient CURES records like the one at issue here.  The Ninth Circuit recently addressed a similar Oregon state law, which required the DEA to obtain a "valid court order based on probable cause" before the state would produce records from its equivalent of CURES.  *See Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228 (9th Cir. 2017).  The Ninth Circuit held that the state law was preempted by the CSA: "By placing the initial burden of requiring a court order to enforce the subpoena upon the DEA, [the Oregon law] interferes with the scheme Congress put in place for the federal investigation of drug crimes and thereby undermines Congress's goal of strengthening law enforcement tools against the traffic in illicit drugs."  *Id*. at 1236-37 (internal quotation marks and brackets removed).

Likewise, at least two other federal courts have enforced Section 876 subpoenas for state prescription drug monitoring program data under similar circumstances.  *See United States Dep't of Justice v. Colo. Bd. of Pharmacy*, 2010

7

WL 3547896 (D. Colo. Sept 3, 2010) (adopting report and recommendation to enforce subpoenas and holding that Section 876 preempted Colorado law restricting law enforcement access to prescription drug records to those of specific patients, which thus barred the state from producing a report of a physician's prescribing history); *United States Dep't of Justice v. Utah Dep't of Commerce*, 2017 WL 3189868 (D. Utah July 27, 2017) (enforcing Section 876 subpoena, holding that Utah law requiring search warrant was preempted). Accordingly, even if a state law existed that required California to refuse to accept the Subpoena here, and to require DEA to secure alternative process such as a search warrant, such law would be preempted by the CSA.

## CONCLUSION

The DEA is authorized to investigate and issue subpoenas under the CSA. The Subpoena at issue meets the procedural requirements, is relevant and material to a DEA investigation, and is specific and narrow in accordance with the Fourth Amendment reasonableness requirement. No state privacy laws prevent California from producing the information. But even if a state privacy law does purport to prevent production, such law would be preempted by the Supremacy Clause. The United States, therefore, respectfully requests the Court to enter an order requiring compliance with the Subpoena.

Respectfully submitted,

DATED: December 21, 2018

ADAM L. BRAVERMAN
United States Attorney

*s/ Dylan M. Aste*
DYLAN M. ASTE
Assistant United States Attorney

Attorneys for the United States

*U.S. v. California*